631 P.2d 548

Irene H. JOHNSON, as surviving spouse of Chester Johnson, deceased, Plaintiff/Appellant,

v.

KERR–McGEE OIL INDUSTRIES, INC., a foreign corporation, Defendant/Appellee.

No. 2 CA–CIV 3740.

Court of Appeals of Arizona, Division 2.

April 6, 1981.

Rehearing Denied May 15, 1981.

Review Denied June 16, 1981.

**394**

Miller, Pitt & Feldman, P.C. by Stanley G. Feldman, Janice A. Wezelman and John L. Tully, Tuscon, for plaintiff/appellant.

Everett, Bury & Moeller, P.C. by David Bury, Tucson, Linn, Helms, Kirk & Burkett by James P. Linn, B. J. Rothbaum, Jr., and Raymond E. Tompkins, Oklahoma City, Okl., for defendant/appellee.

. Stewart L. Udall, Phoenix, Mahoney & Rood by William P. Mahoney, Jr., Phoenix, Frank J. Barry, Tucson, for amici curiae Esther Lee Begay et alia.

The State of Arizona by Calvin Harris, Phoenix, for amicus curiae The Indus. Commission of Ariz.

## OPINION

HOWARD, Judge.

Does the immunity from actions at common law or by statute granted to an employer under A.R.S. Sec. 23–906 of our Workmen's Compensation Act apply to a wrongful death action based on the death of an Indian which occurred on the Navajo reservation while the Indian was employed by a private contractor engaged in mining uranium? We find that it does and affirm.

Appellant filed a five-count action against appellee Kerr-McGee. All counts were based upon the death of appellant's husband from lung cancer which he allegedly acquired while working for appellee in its mining operation on the Navajo reserva-

tion. Count I of the complaint was for wrongful death. Count II alleged strict liability by virtue of the deceased's employment in mining, a hazardous occupation as defined by A.R.S. Sec. 23–803. Count III was based on strict liability as a result of the abnormally dangerous activity being carried on by Kerr-McGee and Counts IV and V alleged that Kerr-McGee was liable under the theories of fraud and intentional tort based on its intentional failure to warn the deceased of the dangers and health hazards to which he would be exposed.

Kerr-McGee filed a motion to dismiss for lack of jurisdiction on the ground that exclusive jurisdiction was with the industrial commission. The trial court granted its motion.

■ Preliminarily, we observe that an Indian has the same rights as any other person to invoke the jurisdiction of state courts to protect legal rights and matters not affecting either the federal government or tribal relations. This right applies to wrongful death actions against a non-Indian defendant for an accident which has occurred on the reservation. *Paiz v. Hughes*, 76 N.M. 562, 417 P.2d 51 (1966). Prosecution of such a claim does not affect the rights of the Navajos to make their own laws and be ruled by them, will not affect their tribal relations and will not affect the rights of the federal government. *Paiz v. Hughes*, supra.

■ The record shows that Kerr-McGee has complied with A.R.S. Sec. 23–961 of our Workmen's Compensation Act and therefore cannot be held liable for damages because of the provisions of A.R.S. Sec. 23–906 if the act applies to the accident in question. Relying heavily on *Swatzell v. Industrial Commission*, 78 Ariz. 149, 277 P.2d 244 (1954), appellant contends that our workmen's compensation laws do not extend to the Navajo reservation. Furthermore, that the application of 40 U.S.C. Sec. 290 violates the treaty between the United States and the Navajos.

Kerr-McGee contends that *Swatzell* is distinguishable and that 40 U.S.C. Sec. 290 makes our workmen's compensation laws applicable to the facts here. It also asserts that there is no treaty violation involved. We agree with Kerr-McGee's position.

Before discussing *Swatzell*, it is necessary to set forth the provisions of 40 U.S.C. Sec. 290:

"Whatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliances with the State workmen's compensation laws of said States and with the enforcement of and requiring compliance with the orders, decisions, and awards of said constituted authority of said States shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State and to all projects, buildings, constructions, improvements, and property belonging to the United States of America, which is within the exterior boundaries of any State, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be.

For the purposes set out in this section, the United States of America vests in the several States within whose exterior boundaries such place may be, insofar as the enforcement of State workmen's compensation laws are affected, the right, power, and authority aforesaid: *Provided, however*, That by the passage of this section the United States of America in nowise relinquishes its jurisdiction for any purpose over the property named, with the exception of extending to the several States within whose exterior boundaries such place may be only the powers above enumerated relating to the enforcement of their State workmen's compensation laws as herein designated: *Provided further*, That nothing in this section shall be construed to modify or amend the United States Employee's Compensation Act, as amended." (emphasis in original)

Having set forth the federal statute, we return to the *Swatzell* case. Swatzell, a non-Indian, was injured while working at the Navajo tribal sawmill located on the reservation. He waived his rights to sue his employer and filed a claim with the industrial commission for compensation. The commission denied compensation because it was without jurisdiction to adjudicate the claim. On appeal our supreme court held that the industrial commission was correct in its jurisdictional conclusion for two reasons. First, Swatzell was neither employed by the federal government nor by the tribe because the tribe was not operating the enterprise. Although not directly employed by the federal government, Swatzell's immediate supervisor was answerable not to the tribe or tribal council, but to the reservation superintendent and later to civil service employees of the Bureau of Indian Affairs, Resources Department. The court found that Swatzell's employer was an agency or instrumentality of the United States and, therefore, the Arizona Workmen's Compensation Act did not apply because it does not subject federal entities to its provisions.

With respect to 40 U.S.C. Sec. 290, the court held that the statute did not apply because general acts of Congress do not apply to Indian activities unless worded so as to clearly manifest an intent to include them and no clear intention appears in the act. The court, in examining the Senate Committee Report, SR No. 2294, 74th Congress, Second Session, which accompanied the act, concluded that the intent of Congress was to extend workmen's compensation to mechanics and laborers employed by contractors. Since the tribal sawmill was not a "contractor", the statute did not apply.

The facts here are distinguishable from those in *Swatzell* for the simple reason that Kerr-McGee is a contractor. Moreover, the law has changed since *Swatzell* was decided. The proposition relied upon in *Swatzell*

regarding general acts of Congress is no longer viable. A general statute in terms applying to all persons includes Indians and their property interests. *Federal Power Commission v. Tuscarora Indian Nation*, 362 U.S. 99, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960). The Navajo lands are held by the United States in trust for the Navajo tribe. Accordingly, we hold that 40 U.S.C. Sec. 290 and the Arizona Workmen's Compensation Act apply here.[1]

■ We are also unable to agree with appellant's claim that the application of U.S.C. Sec. 290 to the facts here abrogates the Navajo's right of self-government secured by the treaty of June 1, 1868, 15 Stat. 667. The Workmen's Compensation Act eliminates litigation and places on business the burden of caring for injured employees, or, when killed, their dependents. *Corral v. Ocean Accident & Guaranty Corp. Ltd.*, 42 Ariz. 213, 23 P.2d 934 (1933). The act provides security for members of the employee's family as well as the employee during periods of disability. *Industrial Commission v. Oden*, 68 Ariz. 234, 204 P.2d 849 (1949). It also provides the procedure by which claims arising out of industrial accidents may be promptly resolved. *Bergstresser v. Industrial Commission*, 105 Ariz. 27, 458 P.2d 961 (1969). The Workmen's Compensation Act does not conflict with the treaty nor with tribal rights under the treaty. Cf. *Navajo Tribe v. National Labor Relations Board*, 288 F.2d 162 (D.C.Cir. 1961), aff'd 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 387 (1961) (the provisions of the National Labor Relations Act are applicable to businesses and business operations existing on the Navajo reservation).

■ Appellant next contends that even if the Workmen's Compensation Act applies, her complaint should not have been dismissed because there was a factual issue as to whether Kerr-McGee properly posted notices in the Navajo language of the employ-

1. Appellant also filed a parallel suit in the United States District Court, *Johnson v. Kerr-McGee Oil Industries, Inc.*, No. CIV 79–331–Tucson–MAR which was dismissed by the fed- eral court on the grounds that 40 U.S.C. Sec. 290 applied. A similar ruling was made in the district court case of *Begay v. Kerr-McGee Corporation*, 499 F.Supp. 1317 (D.C.1980).

ee's right of election as required by the act. We do not agree. The option given an employee, that is, to seek benefits under the Workmen's Compensation Act or maintain a tort action against the employer where the employee fails to post the required notices, is personal to the employee and cannot be exercised by the employee's personal representative. *Jackson v. Northland Construction Co.*, 111 Ariz. 387, 531 P.2d 144 (1975).

■ As for appellant's fraud count we first turn to Larsen, Workmen's Compensation Law, 13–7.2, Sec. 68.32 which states:

"The cases involving allegations of deceit, fraud, and false representation can best be sorted out by distinguishing those in which the deceit precedes and helps produce the injury, and those in which the deceit follows the injury and produces a second injury or loss.

In the first category, a tort action has usually been found barred, since the deceit, so to speak, merges into the injury for which a compensation remedy is provided...."

Accord, *Buttner v. American Bell Telephone Company*, 41 Cal.App.2d 581, 107 P.2d 439 (1940); *Sarber v. Aetna Life Insurance Company*, 23 F.2d 434 (9th Cir. 1928); *Boyd v. American Mutual Liability Insurance Company*, 11 So.2d 102 (La.App. 1942); *Brooks v. American Mutual Liability Insurance Company*, 7 So.2d 658 (La.App. 1942).

In *Wright v. F.M.C. Corporation*, 81 Cal. App.3d 777, 146 Cal.Rptr. 740 (1978) an employee filed suit against an employer seeking recovery for injuries received while mixing chemicals. The plaintiff-employee alleged that his employer knew that his job involved contact with noxious chemicals and fraudulently misrepresented the hazards to induce him to seek employment. He further claimed that by reason of his employer's misrepresentations, the provisions of the workmen's compensation laws of California could be avoided.

The court in rejecting the plaintiff's contention, stated:

" 'The fact that appellant founds his [case] upon the deceit allegedly practiced by [the employer] is immaterial (*Buttner v. American Bell Telephone Company*, (1940) 41 Cal.App.2d 581, 584, 107 P.2d 439, 441).' " 146 Cal.Rptr. at 740.

As for the count on intentional tort, we first turn to A.R.S. Sec. 23–1022 which states:

"A. ... compensation pursuant to the provisions of this chapter for injuries sustained by an employee shall be the exclusive remedy against the employer or any co-employee acting in the scope of his employment ... except where the injury is caused by the employer's or the co-employee's *wilful misconduct* and the act causing the injury is the *personal act of the employer ... or if a corporation, on the part of an elected officer thereof.*

.   .   .   .   .

B. The term 'wilful misconduct' as employed in this section shall be construed to mean *an act done knowingly and purposely with the direct object of injuring another.*" (emphasis added)

The foregoing statute was construed in *Serna v. Statewide Contractors, Inc.*, 6 Ariz. App. 12, 429 P.2d 504 (1967) where the court stated:

"It is well settled that where a statute expressly defines certain words and terms used in the statute the court is bound by the legislative definition in all cases where the rights of the parties litigant are based upon that statute. (citation omitted). The legislature has set two requirements which must be proved in order to exempt an employee from the Workmen's Compensation Act and permit recovery against the employer. The first is, the act must have had the direct object of injuring another. Gross negligence, or wantonness amounting to gross negligence, is not sufficient to constitute a 'willful act' under our statutory definition. It must be shown that the negligence or wantonness was accompanied by the intent to inflict an injury upon another person.

*   *   *   *   *   *

It would appear our statute as well as the principles governing the interpretation of the workmen's compensation statutes which provide for suit at common law for the employer's willful misconduct require that there be deliberate intention as distinguished from some kind of intention presumed from gross negligence. 2 Larsen, Workmen's Compensation Law, Sec. 69.20 (1961). The Arizona statute is most restrictive in this regard." 429 P.2d at 507–08.

The necessity for actual intent to injure is pointed out in Larsen, Workmen's Compensation Law, Vol. 2A, 13–5, Sec. 68–13 where it is stated:

"Since the legal justification for the common-law action is the non accidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury."

It is clear here that the basis of appellant's claim for an intentional tort is the failure to warn. We find that her allegations are insufficient to take the conduct outside of the exclusive remedy of the Workmen's Compensation Act. Such allegations justify the granting of a motion to dismiss for lack of jurisdiction. Cf. *Sanford v. Presto Manufacturing Company*, 92 N.M. 746, 594 P.2d 1202 (App.1979).

Affirmed.

HATHAWAY, C.J., and PHILIP FAHRINGER, Superior Court Judge, concur.

NOTE: Judge Ben C. Birdsall having recused himself in this matter, Judge Philip Fahringer was called to sit in his stead and participate in the determination of this decision.